**In re AMERICA WEST AIRLINES, a Delaware Corporation, Debtor.**

**Ginger EDMONDSON, Movant,**

v.

**AMERICA WEST AIRLINES, INC., Respondent.**

**Bankruptcy No. B–91–07505–PHX–RGM.**

United States Bankruptcy Court, D. Arizona.

Jan. 5, 1993.

Carl A. Eklund, John C. Parks, Faegre & Benson, Denver, CO, Charles R. Sterbach, Steven N. Berger, Gallagher & Kennedy, Phoenix, AZ, for debtor.

Madeleine C. Wanslee, Gust Rosenfeld & Henderson, Phoenix, AZ, Erika P. Rogers, Jones, Jones, Close & Brown, Las Vegas, NV, for movant.

Penn Ayres Butler, Pamela M. Tibbitts, Murphy, Weir & Butler, San Francisco, CA, John Fries, Brenda Moody–Whinery, Ryley, Carlock & Applewhite, Phoenix, AZ, for Unsecured Creditors Committee.

Benjamin Waisbren, Michael R. Hassen, Lord, Bissell & Brook, Chicago, IL.

Mark A. Nadeau, Morrison & Hecker, Phoenix, AZ.

Martin J. Whalen, America West Airlines, Inc., Legal Dept., Mesa, AZ.

John J. Dawson, Thomas J. Salerno, Streich Lang, P.A., Phoenix, AZ.

Paul A. Randolph, U.S. Trustee, Don C. Fletcher, Attorney Advisors, United States Trustee's Office, Phoenix, AZ.

## OPINION AND ORDER GRANTING MOVANT'S MOTION TO MODIFY THE AUTOMATIC STAY

ROBERT G. MOOREMAN, Chief Judge.

This matter is before the Court pursuant to Ginger Edmondson's ("Movant") Motion to Modify the Automatic Stay and Motion for Authorization to File Proof of Claim. After due consideration of the motion, the applicable law, the record herein, material facts not in dispute and under the present posture of the Chapter 11 case, the Court finds and concludes the following:

1. Debtor is an airline carrier which filed its Chapter 11 petition on June 27, 1991 and remains the debtor-in-possession.

2. Movant was an employee of Debtor from March 2, 1987 to August 6, 1992.

3. On March 9, 1992, Movant filed a charge of discrimination against Debtor with the Nevada Equal Rights Commission ("NERC") as well as the Equal Employment Opportunity Commission. ("EEOC").

4. On October 1, 1992, Movant filed a Complaint in the United States District Court for the District of Nevada ("District Court of Nevada"), case No. 92–835–PMP (RLH) naming Debtor as defendant. However, the Complaint has not yet been served upon Debtor. The Complaint alleges that Movant was employed initially as a secretary and eventually became an administrative supervisor. While working for Debtor, it is alleged that Movant's supervisor's conduct constituted sexual harassment. The Complaint alleges the following causes of action based upon the supervisor's post-petition conduct: infliction of emotional distress, assault and battery and interference with contractual relations ("Action"). The Complaint requests damages including but not limited to compensatory damages in excess of $50,000 and punitive damages in excess of $50,000.

5. On November 21, 1992, the EEOC issued a Right To Sue letter giving Movant 90 days to file an action against Debtor for its alleged wrongful conduct concerning her employment.

Movant now requests the Court to modify the stay to file and serve an Amended Complaint in case No. 92–835–PMP (RLH) that includes allegations of Debtor's alleged pre-petition wrongful conduct. Additionally, Movant requests permission to file a proof of claim within 30 days of a judgment in the event a judgment is eventually rendered in her favor. Consequently, the primary issue is whether cause exists to modify the automatic stay to allow Movant to file the Amended Complaint regarding Debtor's alleged pre-petition conduct and proceed with the Action.

■■■ The automatic stay pursuant to 11 U.S.C. 362(a)(1) prevents Movant from filing, serving and proceeding to trial regarding the Amended Complaint concerning Debtor's alleged pre-petition conduct. However, relief from the automatic stay may be obtained "for cause" pursuant to 11 U.S.C. 362(d). The Bankruptcy Court has discretion in determining whether cause exists to modify the stay. *Mac Donald v. Mac Donald (In re Mac Donald)*, 755 F.2d 715 (9th Cir.1985). The Bankrupt-

cy Court must make the following determinations in deciding cause exists to modify the stay:

1) Whether the litigation causes debtor great prejudice. *In re Johnson,* 115 B.R. 634, 636 (Bankr.D.Minn.1989);

2) Whether a balancing of the respective hardships tips in favor of the debtor or creditor, resulting from denial or granting of the relief. *Id.;*

3) Whether public policy supports the type or kind of action the Movant is bringing against the Debtor. *Carter v. Larkham (In re Larkham),* 31 B.R. 273 (Bankr. D.Vt.1983).

The Court in *Johnson* listed the following circumstances that a Bankruptcy Court should consider when making its determination whether to modify the stay:

1) Whether insurance is available to defend debtor or whether the defense of the suit will impose a financial burden;

2) Whether judicial economy favors the action to proceed in the court in which it commenced;

3) Whether a likelihood exists that resources used to prepare the matter for trial would be wasted due to the stay enjoining the action from proceeding;

4) Whether the issues are solely state law actions or whether a special tribunal should use its expertise to hear the issues;

5) Whether the litigation involves other parties in which the Bankruptcy Court lacks jurisdiction and whether full relief may be accorded to all non-debtor parties without debtor's presence;

6) Whether the creditor has a probability of success on the merits;

7) Whether the Bankruptcy Court should first address the threshold bankruptcy-law issues.

■ Regarding the first determination, Debtor alleges that the litigation of the action would cause Debtor great prejudice because Debtor lacks insurance to defend the Action. It is alleged that Debtor would be required to use valuable resources to defend the Action because Debtor does not have insurance for its defense. The Court finds and concludes on this record and the history of this case that the funds necessary to defend the action in Nevada will not place a great burden on the estate at this stage of the reorganization. Debtor has continued to operate efficiently and effectively during its Chapter 11 although it has incurred substantial attorneys' fees and administrative costs administering the estate to date. The fees necessary to defend the Action are de minimis in comparison. Consequently, defense of the suit will not affect Debtor's ability to successfully reorganize in the future.

Next, to analyze the balancing of the hardships, the Court will consider the consequences of Movant's inability to bring the Action versus Debtor's hardship in being required to defend the Action. Movant has allegedly already suffered due to the alleged conduct and will continue to suffer unless she is able to have her day in court. Moreover, the passage of time will cause the aging of evidence as well as the fading of memories concerning the facts of the dispute. Based on the foregoing, the Court finds and concludes that Movant will incur a greater hardship if the stay is not modified.

Conversely, Debtor will incur minimal harm. Debtor must recognize that the Bankruptcy Code does not provide unlimited protection for a Debtor.

> [t]he mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their [sic] opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount. *In re Johnson,* 115 B.R. at 636, (citing *In re Bock Laundry Machine Co.,* 37 B.R. 564, 567 (Bankr.N.D.Ohio 1984).)

Debtor must merely hire local counsel and allow its employees to participate in discovery and to testify. Judicial economy also favors the Action to proceed in Nevada because the Plaintiff is located in Nevada, the Debtor is present and operates in Nevada and the witnesses more than likely reside in Nevada. Additionally, Movant only seeks to establish liability and liquidate damages and cannot commence collection efforts without further Bankruptcy Court

authority or approval. Thus, again in balancing the hardships, the Movant would incur the greater hardship in the event the stay is not modified.

■ The third determination is whether public policy supports the Movant's action. Although the Court in *Johnson* did not consider public policy as criteria when determining whether cause exists to modify the stay, this Court finds and concludes it to be an important factor when determining whether the stay should be modified. Similarly, the Court in *Larkham* recognized that the Bankruptcy Code should consider public policy to determine whether cause exists to modify the stay. 31 B.R. at 276. In *Larkham*, an employee filed an employment discrimination suit prior to Debtor filing its Chapter 7 petition and the employee requested permission to modify the stay to allow the action to continue. The Court considered, along with other factors, that the employee should be allowed an expeditious consideration of her employee discrimination suit because public policy supported the employee's action to resolve the dispute. *Id.* This Court finds and concludes that public policy is a strong consideration when determining whether the stay should be modified but should be considered in light of whether the estate will incur great prejudice. *Matter of Page–Wilson Corp.*, 37 B.R. 527 (Bankr.D.Conn. 1984).

■ Other Courts have considered a more subjective factor than whether the action concerns a public policy matter. Those Courts attempted to determine whether Debtor engaged in morally culpable conduct which the creditor is attempting to remedy through a civil action. *In re Stranahan Gear Co., Inc.*, 67 B.R. 834 (Bankr.E.D.Pa.1986) (Stay not modified where creditor was attempting to seek a breach of warranty claims); *In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005 (Bankr.E.D.Pa.1987) (Stay not modified where creditors were attempting to seek a fraud claim for sale of diamonds); *In re Parkinson*, 102 B.R. 141 Bankr.C.D.Ill. 1988) (Stay was modified to allow an unnamed action to proceed in another forum).

The "morally culpable" factor is a vague and ambiguous standard in this context, consequently, it is difficult to apply. In contrast, a more objective factor is whether public policy favors the modification of the stay. In determining public policy, Courts may use legislation and other objective standards to determine whether public policy supports the creditor in its attempts to enforce its action. Therefore, this Court will not make a determination as to whether the alleged party's conduct is morally culpable but will determine whether public policy supports the creditor's cause of action.

■ Title VII of the Civil Rights Act of 1964 makes "it an unlawful employment practice for an employer … to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." The Supreme Court has concluded that an employer's sexual harassment of an employee is considered a violation of Title VII. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 63–65, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). Consequently, the enactment of Title VII indicates the strong public policy against sexual harassment. Moreover, a strong public policy supports resolving alleged sexual harassment claims without undue delay for the benefit of all the parties. *Matter of Chapter 13, Pending and Future Cases*, 19 B.R. 713, 717 (Bankr. W.D.Wash.1982). Thus, the Court finds and concludes that a strong public policy supports the modification of the stay on Movant's behalf.

■ Finally, this Court will consider the other factors enumerated in *Johnson* which this Court deems important considering the circumstances of this case. Debtor argues that the Bankruptcy Court should first address the threshold bankruptcy-law issue, that is, whether Movant is entitled to preferential treatment over all other creditors in the event Debtor is liable. However, such argument is premature because it is more appropriate for the District Court of Nevada to first determine the non-bank-

ruptcy issues, i.e. whether a claim exists and the damages therein if any. After such determination, then the bankruptcy issues become relevant. Consequently, it would be a waste of this Court's judicial resources to attempt to estimate the claim and its priority among other claimants in this complex and large airline case. Also, this Court may never be required to make such a determination in the event the District Court of Nevada finds the claim is without merit after hearing the dispute.

In the alternative, Debtor argues that the matter should be allowed to proceed but requests the matter to proceed in this Court rather than the District Court of Nevada. However, the Court in *Holtcamp v. Littlefield* (*In re Holtcamp*), 669 F.2d 505 (7th Cir.1982), affirmed a decision to modify the stay to allow an action based on state law claims to proceed in state court. The fact that the state court action involved non-bankruptcy issues which did not require the expertise of the Bankruptcy Court and could be handled elsewhere militated toward a finding that the state court was the proper tribunal for the action. *Id.* at 509. In the instant case, the Court finds and concludes that the Action involves non-bankruptcy common-law claims that may best be heard in the District Court of Nevada.

Consequently, based on the record, the Court finds and concludes that good cause exists to modify the stay for Movant to proceed in the District Court of Nevada. Movant requests permission to file a proof of claim in the event a judgment is rendered in Movant's favor. Rule 3002(c)(3) allows for such filing within 30 days of the judgment becoming final if the judgment is for the recovery of money or property from the entity. Consequently, the Court finds and concludes that Movant may file a proof of claim within 30 days of the final judgment in the event a judgment is rendered in Movant's favor.

Accordingly,

IT IS ORDERED that Movant's motion is granted.

IT IS FURTHER ORDERED that in the event Movant obtains a judgment, Movant may not attempt to collect the judgment without seeking relief from the stay, all pursuant to the foregoing.