**In re Henry YAFFE, Debtor.**

**Bankruptcy No. 84–00453.**

United States Bankruptcy Court, District of Columbia.

Jan. 2, 1986.

Jeffrey C. Tuckfelt, McLean, Va., for debtor.

Joseph E. Schuler, Washington, D.C., for movants Sue and Mary Beebe.

Joseph C. Roesser, Wheaton, Md., for movants Mary Ellen Platt, Patrick M. Moran, Peter J. Kostic and Eugene Johnson.

Wiley A. Branton, Jr., Washington, D.C., for movant Betty Dixon Johnson.

John W. Karr, Washington, D.C., for co-defendant Oates.

Mark B. Sandground, Washington, D.C., for co-defendant Roy Bernard.

Donald Cheatham, Washington, D.C., for co-defendant Charles Stinson.

### ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

Before the Court are the Debtor's motion for relief from this Court's order of October 19, 1984, and the opposition to the Debtor's motion. The opposition was filed by several individuals who are plaintiffs in a case now scheduled for trial in D.C. Superior Court on January 30, 1985 ("the Superior Court case"). The Superior Court case involves multiple parties and claims and cross-claims. This Court's October 19, 1984 order ("the lift-stay order") granted partial relief from the automatic stay provided by 11 U.S.C. § 362(a) so as to permit the Superior Court case to proceed to judgment (but not execution as against the Debtor on any judgment that might be rendered). At the hearing on the lift-stay motion the Debtor's counsel earnestly argued that his client's legal expenses in

defending the Superior Court trial would be very substantial and would not be covered by any insurance. Nevertheless, balancing the equities, this Court lifted the stay.

The present motion for relief from the lift-stay order is premised on the fact that trial of the Superior Court case has now been delayed until about two weeks *after* the date (January 18, 1985) for filing a complaint objecting to discharge or dischargeability, and upon certain "questions and comments [by this Court] at the hearing" on the lift-stay motion.

■ Since the Court's questions and comments may have been misunderstood, the Court will now further explain its reasoning. "Discharge" and "dischargeability" involve two separate concepts. Certain grounds (such as concealment of assets or of financial records) are enumerated in 11 U.S.C. § 727 for denying a debtor any discharge in bankruptcy. If a bankruptcy discharge is denied, the debtor remains liable for *all* his debts, as if he had not been through bankruptcy at all. By contrast, 11 U.S.C. § 523 governs dischargeability of certain kinds of debts (such as certain taxes and student loans and—of particular relevance in this case—debts "for willful and malicious injury by the debtor to another entity or to the property of another entity"). 11 U.S.C. § 523(a)(6). Debts which are found to be non-dischargeable must be paid, even though the debtor obtains a general bankruptcy discharge allowing him to be relieved from payment of his other debts.

■ By the explicit terms of Bankruptcy Rule ("B.R.") 9006(c)(2), this Court lacks power to shorten the time for filing a complaint objecting to a debtor's discharge or a complaint asking that a particular debt be declared non-dischargeable. *See* B.R. 4004(a) and 4007(c). Hence, the Court is convinced that it would be an abuse of discretion in the circumstances of this case to adopt the Debtor/defendant's suggestion to hold the plaintiffs in the Superior Court case guilty of laches if they fail to file a complaint in this Court concerning discharge or dischargeability (or both)

some time prior to the January 18, 1985 deadline. Moreover, even if those plaintiffs were to meet some arbitrary earlier deadline, it is obvious that no final resolution could be obtained of whatever complaint they might file prior to January 30, 1985, or indeed (in all likelihood) for a considerable period of time thereafter.

This Court's comments at the lift-stay hearing were directed to the foolishness of "beating a dead horse," rather than being directed to the legal rights of the parties. If Yaffe has no assets from which a judgment could be collected, then it would seem to be foolish for plaintiffs to spend time and money in the effort to get a judgment against him, and almost equally foolish for him to spend time and money resisting judgment. Those practical considerations are highlighted when bankruptcy intervenes. Then the trustee in bankruptcy must collect and liquidate all of the debtor's non-exempt assets. Whatever assets there are, if any, are to be distributed by the trustee *pro rata* among all creditors. The dollar figure each creditor gets thus depends upon the amount of his claim in comparison to the amount of all other creditors' claims. But if there are no assets, no creditor can get anything, and the amounts of the various claims (either absolutely or in comparison to other claims) become immaterial. According to Yaffe's bankruptcy schedules filed in this case, he has no non-exempt assets. If (1) those schedules are accurate, and (2) Yaffe obtains a bankruptcy discharge, and (3) the particular debts at issue here are dischargeable, then it will be a certainty that the creditor-plaintiffs will gain nothing and the debtor-defendant will lose nothing through continuation of the Superior Court case as against Yaffe. Or at least so it seems to this court.

However, none of these three things is likely to be known for certain by January 30, 1985, unless perchance the bankruptcy trustee makes a prompt and definitive no-asset determination and the Superior Court plaintiffs fail to file a timely complaint in this Court objecting to discharge or dischargeability. Given the present litigative posture of the parties, such as eventuality seems unlikely.

This Court could accede to the Debtor's request and reimpose the automatic stay, or it could request the Superior Court to postpone trial once again, in order to await the outcome of whatever litigation may be brought in this Court. However, the Superior Court case has already been pending for a number of years and involves many parties in addition to this one Debtor. It would seem to be grossly unfair to all those other parties to delay the Superior Court case yet again at this late date, to suit the convenience of this one individual.

It seems to this Court that the better course by far is to allow the Superior Court case to proceed to trial first. That trial will have to be held as to all other parties regardless of what happens with Yaffe, so there will be only a minimal extra burden on that Court and on the other parties. Yaffe can probably minimize his own litigative expenses in the Superior Court case by relying on his co-defendants to shoulder most of the defensive burden, at least where their interests coincide. If Yaffe is found not liable in the Superior Court case, then questions of discharge and dischargeability will become moot, and no further proceedings in this Court will be necessary, thus saving the parties and this Court the burden of that extra litigation.

Although under 11 U.S.C. § 523(a), (b) and (c) this Court has exclusive jurisdiction to determine whether a debt is non-dischargeable on the ground that it is a debt "for willful and malicious injury," the issues relevant to that determination seem to be rather closely related to issues which might arise in the Superior Court case. It is possible, indeed, that a decision on such an issue in that Court could constitute collateral estoppel in a dischargeability proceeding in this Court. For example, if the issue of Yaffe's recklessness is withdrawn from jury consideration, leaving only an issue of negligence, the decision that Yaffe could not be considered reckless would probably be determinative that, *a fortiori*, his actions or inactions could not be considered "willful and malicious."

NOW THEREFORE IT IS ORDERED that the Debtor's motion for relief from this Court's order of October 19, 1984 is DENIED; and it is further

ORDERED that, should any party or parties to the Superior Court case file a complaint or complaints objecting to discharge or for determination of dischargeability, or both, in this Court, all proceedings in the adversary proceeding or proceedings thus instituted, except issuance and service of summons and complaint, shall be stayed until final resolution of the Superior Court case or until further order of this Court.

This Court also respectfully requests that, if the Superior Court can do so without inconvenience to its own proceedings, that Court frame the issues before it in such a way that this Court may have the benefit of an opinion from jury or Judge of that Court concerning whether the Debtor/defendant Yaffe is guilty of recklessness. The issues to be decided by this Court on a complaint as to dischargeability can then probably be limited to a determination whether such recklessness, if so found in the Superior Court case, sinks to the level of "willful and malicious injury" within the meaning of 11 U.S.C. § 523(a)(6).